**UNITED STATES DISTRICT COURT**
**OF THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **WILLARD LECROY, INDIVIDUALLY** | § | |
| **AND ON BEHALF OF THE ESTATE OF** | § | |
| **LILIA LECROY, DECEASED, AND** | § | |
| **EDWARD LECROY** | § | |
| | § | |
| **VS.** | § | **CAUSE NO.  6:17-cv-00280** |
| | § | **JURY TRIAL DEMANDED** |
| | § | |
| **VOLUME TRANSPORTATION, INC. and** | § | |
| **MARIO SAUCEDO** | § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff files this first amended complaint, and would respectfully show the Court as follows:

**I. Nature of Suit**

1.      This is a negligence claim arising out of a severe wreck with a tractor trailer.

**II. Parties**

2.      Plaintiff, Willard Lecroy, individually and on behalf of the estate of Lilia Lecroy, deceased, is a citizen and resident of Smith County, Texas.

3.      Plaintiff, Edward Lecroy, is a citizen and resident of Smith County, Texas.

4.      Defendant, Volume Transportation, Inc. is a Georgia corporation with its principal place of business at 2261 Plunkett Road, Conyers, GA 30012. Volume Transportation, Inc. Service of process has been completed and Volume Transportation has entered an appearance herein.

5.      Defendant, Mario Saucedo, is a citizen and domiciliary of Ridge Manor, Florida, and his place of residence is, 6060 Knollwood Dr., Ridge Manor, FL 33523. Service on Mario Saucedo has been completed, and Mario Saucedo has entered an appearance herein.

### III. Jurisdiction and Venue

6.      The court has jurisdiction over this lawsuit because this suit involves diversity jurisdiction pursuant to Section 28 U.S.C. 1332(a). Specifically, there is diversity between the parties because the plaintiff is a citizen of Texas, the defendant corporation is a citizen of Georgia, and the defendant driver is a citizen of Florida. Additionally, the amount in controversy exceeds $75,000.

7.      Further, venue is proper in the Tyler division of the Eastern District of Texas in that all or a significant portion of plaintiff's claims and/or causes of action accrued in the Eastern District of Texas pursuant to 28 U.S.C. §1391(a). Specifically, this crash occurred in Smith County, Texas, while Saucedo was operating a vehicle in Smith County, Texas, within the course and scope of his employment for Volume Transportation, and the facts are detailed below. These contacts in Smith County also satisfy the personal jurisdiction requirements as to each defendant because specific jurisdiction is present.

### IV. Facts

8.      This lawsuit arises from a severe wreck that occurred on February 03, 2017. Mario Saucedo was operating a 2017 Cascadia Freightliner, with a 1999 Great Dane Trailer attached, while in the course and scope of his employment for Volume Transportation, Inc.

9.     Jessica Lecroy drove the 2004 Nissan Xterra, Edward Lecroy was a backseat passenger, and Decedent Lilia Lecroy was a front seat passenger in the same vehicle. Willard Lecroy, husband of Lilia Lecroy at the time of her death, was not in the vehicle.

10.     At about 4:13 in the afternoon on Friday, February 3rd, Saucedo was northbound on US 271, in the outside lane, approaching the intersection of US 271 and the loop extension in a 55 mph zone. The Nissan Xterra was southbound on US 271, in the left turn lane. This busy intersection is controlled by a light.

11.     Saucedo was traveling at a faster rate of speed than appropriate for the traffic conditions. Saucedo failed to recognize that his light had been green for a long period of time, had turned yellow, and had turned red as he entered the intersection. He failed to slow down at all or stop. Saucedo failed to recognize that four vehicles were turning in front of him in quick succession, and entered the intersection as the light changed to red, causing the catastrophic wreck with the fourth vehicle—the Lecroy's vehicle.

12.    **Cell Phone Use by Saucedo.** At the time of the wreck, Saucedo was a distracted

driver. He admitted in his deposition that he was using his cell phone and talking to his wife, for

ten minutes:

Q. Were you on your phone at the time of the wreck?
A. Yes. I have Bluetooth.
Q. Who were you speaking with?
A. My wife.
Q. And how long had you been on the phone?
A. Probably ten minutes.
Q. What were y'all discussing?
A. I was discussing that I had one more trip to make
and then I was going to be routed back to Texas, from
my understanding. And I would be coming to see her.



Saucedo deposition, 35:22-24; 36:3-4, 7-8, 11-16.

13.    It's well known in the trucking industry that use of cell phones while operating

CMVs is a distraction to the CMV driver, who needs to devote his full focus and attention to the

task at hand—operating his CMV:

Note that hands-free devices are no less likely than hand-held cell phones to cause you to become distracted. Attention is diverted from the driving task while using either device.

*Florida CDL Manual*, p. 2-22.

14.    As explained in Trucking: Tractor-Trailer Driver Handbook/Workbook, P. 223,

"Cell phone conversations are dangerous because they distract drivers intellectually. Even if you

think you are watching the road during a phone call, you are actually just steering the vehicle by

force of habit, and using your logic and reasoning brain for your phone conversation… **When possible, avoid phoning and driving at the same time… Use it only if absolutely necessary**."

15.     Saucedo admitted that using a cell phone while driving a CMV is a distraction, and such use keeps people from driving safely. Saucedo deposition, p. 87-88. Further, he admitted that his cell phone was "going wacko" on him prior to the wreck, and even replaced it within a week because it was so defective. Saucedo deposition, p. 90. Saucedo's use of his cell phone, a 10 minute conversation with his wife about nothing important while driving through the city of Tyler in heavy traffic with many lights, exhibits his failure to operate a CMV safely.

16.     It is well known in the industry that the only appropriate/safe time for a cell phone to be used by a CMV driver is while the CMV is stopped in a safe place. FMCSR §390.17 does prohibit such use if it decreases the safety of operation of the CMV.

17.     It is industry policy to prohibit cell phone use of any kind while operating CMVs, and that Volume Transport's failure to adopt the well-known and reasonable policy is evidence of Volume Transport's poor climate and culture for safety.

18.     The evidence demonstrates driver distraction by cell phone use. In deposition, Saucedo testified that he was not even aware the light had changed color as he approached it:

Q. And what color was your light as you were ten feet away?
A. I seen it green.
Q. Okay.
A. Because I was – it was like right above my head. When I seen them, I glanced like that real quick like oh, my God. And I seen it green.

Saucedo deposition, 51:20-25, 52:1.

19.     Saucedo was also unaware of the number of vehicles that crossed his path ahead and per the ECM data, failed to recognize that they were hazards and respond to the vehicles by braking and preparing to stop as they were crossing ahead within seconds of his truck:

- Saucedo was completely unaware of a vehicle turning left into the Valero convenient store south of the intersection at issue, at 8 seconds prior to impact

- Saucedo failed to brake for a series of vehicles turning left at the intersection in quick succession, the last of which cleared the intersection only 2 seconds prior to impact.

Saucedo deposition, p. 60, 81.

20.     There is no doubt that Saucedo's failure to perceive the hazards ahead and respond by braking and coming to a stop in accordance with trucking industry standard caused the collision at issue.

21.     Saucedo was required to slow down and prepare to stop when approaching a traffic light that has been green for an extended period, known in the industry as a stale green light. "If a traffic light has been green for a long time, it will probably change before you get there. Start slowing down and be ready to stop." Florida CDL Manual, p. 2-10. Saucedo had sufficient time to stop before the white stop line at a deceleration rate within the capabilities of a loaded tractor trailer equipped with the type of braking system in the subject tractor trailer. Saucedo had a clear view that the light was green from 1,060 feet back, with no knowledge of how long it had been green. He should have been slowing down and prepared to stop. One vehicle turned in front of Saucedo and into the convenience store. The ECM data reveals Saucedo did not brake in response to this hazard. Lecroy was the last in a stream of left turning vehicles (4 total) which turned in front of Saucedo at the subject intersection, the last clearing the intersection only 2 seconds before impact. The ECM data reveals Saucedo did not brake in

response to this hazard. Saucedo's light turned yellow, with traffic in the intersection, and the ECM data reveals Saucedo did not brake in response to this hazard. Saucedo's light turned red 75 feet from impact and well before the traffic lanes of loop 323. Saucedo's light was red at the time of impact.

22.     Saucedo collided with the Xterra on the front passenger side, causing the death of Lilia Lecroy and severe injury to Edward Lecroy.



## V. Negligence of Mario Saucedo

23.     In causing the collision, Saucedo was negligent in the following acts and omissions:

> A.     Defendant failed to stop at the proper place.
>
> B.     Defendant failed to control his speed as required by the laws of the State of Texas.
>
> C.     In that the defendant failed to timely apply his brakes as a reasonable and prudent person would do under the same or similar circumstances.
>
> D.     Failing to maintain a proper lookout, and was otherwise inattentive and distracted.
>
> E.     In that the defendant failed to take proper evasive action.
>
> F.     In that the defendant failed to yield right of way.
>
> G.     In that the defendant operated his cell phone during the time of collision and was distracted by his cell phone use.

Each negligent act or omission constituted a proximate cause of the collision and of the resulting injuries to Edward Lecroy and the death of Lilia Lecroy.

## VI. Vicarious Liability Of Defendant, Volume Transportation, Inc.

24.     At all relevant times to the collision, Saucedo was acting in the course and scope of his employment with Volume Transportation, Inc. Therefore, Volume Transportation, Inc. is vicariously liable for the negligence and negligence per se of its employee, Saucedo.

## VII. Negligence Of Volume Transportation, Inc.

25.     Volume Transportation, Inc. was negligent in the following acts and/or omissions:

> A.     Negligently failing to institute and maintain reasonable driving training and safety policies and programs for employees in a same or similar position as Saucedo, and

B.      Negligently failing to supervise Saucedo.

Each negligent act or omission constituted a proximate cause of the collision and of the resulting

injuries to Edward Lecroy, and the death of Lilia Lecroy.

## VIII. Damages

26.     As a proximate result of defendant's negligence, Plaintiff, Edward Lecroy, has

suffered serious bodily injury and seeks damages as follows:

A.      Physical pain and mental anguish in the past and future

B.      Medical care expenses in the past and future.

C.      Loss of wages and loss of earning capacity in the past and in the future.

D.      Physical impairment in the past and future.

E.      Disfigurement in the past and future.

27.     As a proximate result of defendant's negligence, Plaintiff, Willard Lecroy,

individually and on behalf of Lilia Lecroy, deceased, seeks survival damages as follows:

A.      Pain and mental anguish for Lilia Lecroy;

B.      Funeral and burial expenses for Lilia Lecroy;

28.     As a proximate result of defendant's negligence, Plaintiff, Willard Lecroy,

surviving spouse of Lilia Lecroy, deceased, seeks the following wrongful death damages:

A.      Pecuniary Loss of the care, maintenance, support, services, advice,

counsel, and reasonable contributions of a pecuniary value, that Willard Lecroy

would have received from Lilia Lecroy had she lived, and pecuniary loss that will

be sustained in the future.

    B.     Loss of companionship and society sustained in the past and future for Willard Lecroy;

    C.     Mental Anguish in the past and future for Willard Lecroy;

    D.     Loss of inheritance for Willard Lecroy;

    E.     Fair Market Value of Vehicle, Towing and Storage expenses.

29.     As a proximate result of defendant's negligence, Plaintiff, Edward Lecroy, surviving child of Lilia Lecroy, deceased, seeks the following wrongful death damages:

    A.     Pecuniary loss sustained in the past and future;

    B.     Loss of companionship and society sustained in the past and future;

    C.     Mental anguish sustained in the past and future;

    D.     Loss of inheritance.

### IX. Jury Demand

30.     Plaintiff requests a jury trial and tenders the required jury fee.

### X. Prayer

Plaintiff asks that this Court enter a judgment in favor of plaintiff, an award of damages as explained above, costs, pre and post-judgment interest, and other special damages in accordance with the relief she is entitled, and such other relief as the Court deems just and proper.

Respectfully submitted,



121 N. Spring Avenue
Tyler, Texas 75702
(903) 526-1600 Telephone
(903) 595-0796 Telefax
mschouten@martinwalkerlaw.com


By:    ___/s/ Marisa Schouten_____
       Marisa Schouten
       Bar I. D. No. 24039163

       ATTORNEYS FOR PLAINTIFFS


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 9, 2018, all who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).  I hereby certify that I have served all counsel of record electronically or by another manner by Federal Rule of Civil Procedure 5(b)(2).


/s/ Marisa M. Schouten_____